## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

**Case No. 21-CR-17 (MAD)**

**v.**

**LAKSHMIKANTH R. SRIPURAM,**

    **Defendant.**

---

## SENTENCING MEMORANDUM FOR DEFENDANT
## LAKSHMIKANTH REDDY SRIPURAM

    **KLINGEMAN CERIMELE, ATTORNEYS**
    Ernesto Cerimele, Esq.
    100 Southgate Parkway, Suite 150
    Morristown, New Jersey 07960
    *Attorneys for Defendant Lakshmikanth Reddy Sripuram*

**PRELIMINARY STATEMENT**

For nearly his entire life, Defendant Lakshmikanth Reddy Sripuram was a law-abiding individual.

A brief transgression between 2015 and 2016 while managing an IT staffing company ultimately resulted in Mr. Sripuram entering a plea to a one-count Information on March 5, 2021. The Information charged him with conspiracy to commit wire fraud in violation of Title 18, U.S.C. § 1349 and 1343.

The Government and Defendant are in agreement that Mr. Sripuram's Total Offense Level is 14, with a Criminal History Category I.[1] At sentencing on August 15, 2024, Mr. Sripuram will ask the Court to consider the factors listed in 18 U.S.C. § 3553(a) and then impose a sentence of probation.

Mr. Sripuram's offense stems from his role as owner and manager of PIntegra, LLC ("PIntegra"), a small IT staffing company he created in 2012. In that capacity, he was offered an opportunity by Srinivas Kancha (his friend and coconspirator that worked at the Office of the New York State Comptroller) to staff PIntegra IT professionals for contract positions at OSC in exchange for a fee proposed by Kancha. Mr. Sripuram regrettably accepted.

In addition to a number of exemplary personal characteristics about Mr. Sripuram that will be discussed in this memorandum, three things about this case stand out that counsel for a probationary sentence. First, Mr. Sripuram did not initiate the unlawful relationship in which he was involved. To the contrary, he was solicited to pay kickbacks by a State employee and former friend. Second, the amount of profit Mr. Sripuram realized from the arrangement was minimal

---

[1] As set forth more fully below and in the Government's Sentencing Memorandum, the total loss is $307,716 instead of the amount stipulated to by the parties in the plea agreement. In addition, Mr. Sripuram is eligible for an additional two-point reduction as a Zero-Point Offender, pursuant to amendments to USSG §§4C1.1(a) and (b).

compared to his coconspirator. In fact, the vast majority of the money Mr. Sripuram received flowed to PIntegra employees, who actually worked full-time on the OSC projects. <u>Finally</u>, when he was approached by federal agents eight years ago, in 2016, Mr. Sripuram immediately accepted responsibility for his actions and cooperated with law enforcement in the prosecution.

Mr. Sripuram deeply regrets his involvement in this offense and is committed to repaying restitution, in full. He has worked tirelessly since 2016 to support his growing family, be a productive member of society, and cooperate with the Government's investigation. Notwithstanding, Mr. Sripuram will almost certainly be removed from the United States, where he has lived for decades, since 2005. [Exhibit A, Immigration Letter].

**I.      SENTENCING PROCEDURE**

Sentencing courts must "consider the widest possible breadth of information about a defendant" to ensure individualized sentencing. *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 179 L. Ed.2d 196 (2011). The Second Circuit has directed the Court to conduct a three-step inquiry when imposing a sentence: (1) calculation of the Guidelines range, (2) ruling on any motions for departures, and (3) determination of the § 3553(a) factors. *United States v. Crosby*, 397 F.3d 103 (2d. Cir. 2005).

**1.      GUIDELINES CALCULATION**

In this case, Mr. Sripuram, the Government and U.S. Probation Office are in agreement that Defendant is in Criminal History Category I because he has no prior juvenile or adult convictions. (PSR at ¶ 36-39).

In addition, the Parties agree that the correct offense level 14. First, Mr. Sripuram is eligible for a two-point guidelines reduction pursuant to the amendments to USSG §§4C1.1(a) and (b) for Zero-Point Offenders. Furthermore, the Parties agree that the loss set forth in the plea

agreement has been overstated and the correct loss amount is $307,716. Consequently, because the loss is below $550,000 but greater than $250,000 the offense level should be increased 12 levels (rather than 14 levels). USSG §2B1.1(b)(1)(H).

Mr. Sripuram does not expect the Court to have to rule on any contested guidelines issues.

**2.   THIS COURT SHOULD IMPOSE THE MINIMUM SENTENCE REQUIRED BY LAW, EXERCISING THE DISCRETION RECOGNIZED BY THE SUPREME COURT IN *GALL V. UNITED STATES* and 18 U.S.C. § 3553 (a).**

Justice Anthony Kennedy has stated that, "our resources are misspent, our punishments too severe, our sentences too long."[2] It is incumbent on this Court to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 51(2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

Pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), this Court must impose a sentence "sufficient, but not greater than necessary," to achieve the objectives of sentencing, specifically with regard to the factors set forth at § 3553(a). This obligation, known as the "parsimony clause," applies at every federal sentencing "except as otherwise specifically provided." 18 U.S.C. § 3551(a). Thus, the Court's statutory mandate is to impose the lowest sentence that serves the purposes of sentencing - not to choose among multiple "reasonable" sentences. 18 U.S.C. §3553(a) ("parsimony provision"); *Rita v. United States*, 551 U.S. 338, 354 (2007). Indeed, the command of the parsimony clause defines the Court's "overarching duty." *Pepper v. United States*, 131 S.Ct. 1229, 1243 (2011).

---

[2]   Justice Anthony Kennedy, Speech at the American Bar Association Annual Meeting (August 9, 2003).

While a sentencing court must take the Guidelines into account, it may not presume that the Guidelines are reasonable, and must give careful attention to the factors contained in § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009).

The Supreme Court has restored to the District Court sentencing discretion that the mandatory sentencing guidelines had removed when the Guidelines were enacted more than twenty years ago. Among the factors to be considered by the Court pursuant to § 3553(a) are (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, and (3) "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from future crimes of the defendant." 18 U.S.C. § 3553(a).

    i)   **The Characteristics of the Defendant [§ 3553(a)(1)]**

Lakshmikanth Sripuram is a 40-year-old man, who has lived a law-abiding life, until he committed the offense for which he has pleaded guilty and accepted responsibility.

Mr. Sripuram was born in Mahabubnagar, India to Yadagiri Reddy Sripuram and Vijaya Laxmi Sripuram. He was raised by his parents alongside his sister, Shirisha Sripuram (39), and brother, Srikanth Reddy Sripuram (37), and their upbringing was "free of abuse, neglect, or want of essentials." (PSR at ¶ 40). When he was ten years old, Mr. Sripuram was selected to go to school and, because it was approximately thirty miles from his hometown, he resided in a dormitory. He fondly recalls that his time at boarding school included "some of the happiest moments of [his] life." (Exhibit B, Lakshmikanth Reddy Sripuram Letter). After attending boarding school until age 15, Mr. Sripuram remained in India and, after obtaining his undergraduate degree in electrical

engineering, moved to the United States on August 8, 2005 via a H-1B visa. He then resided in New Mexico while working towards a Master's degree in electrical engineering, which he earned from the University of New Mexico in March 2007.

Upon his graduation from the University of New Mexico, Mr. Sripuram struggled to find employment during the economic recession, but eventually obtained found employ as a software engineer. Then, in 2012, Mr. Sripuram began his own information technology consulting and staffing company, PIntegra, LLC (while still also working as an engineer on various projects throughout the country). In his role as managing partner of PIntengra, Mr. Sripuram has become instrumental to the company's success. Moreover, he has also become a mentor—and friend—to many of his employees. For example, in the seven years since they first became acquainted, Mr. Sripuram has been a "mentor, career coach, friend, and employer" to Ajayram Singamsetty. (Exhibit C, Ajayram Singamsetty Letter). Indeed, they are not only "best friend[s]," but an "integral part" of one another's families. *Id*. Likewise, Murali Shirigada, who first met Mr. Sripuram in early 2020, describes the way in which he "took [them] under his wing, serving not only as a mentor but as a beacon of guidance and support" and then, along the way, also became a "dear friend." (Exhibit D, Murali K. Shirigada Letter). Other employees similarly describe Mr. Sripuram as "an exemplary employer," who is "willing[] to lend a helping hand and support others, both professionally and personally" and is so beloved that "[h]e is invited to every marriage, birthday, and important event[] in his employees' lives." (Exhibit E, Sai Sudha Alapati Letter; Exhibit F, Satarupa Chakraborty Letter). Even a former colleague continues to regard him fondly—now as a friend—and reflects upon what a "good employee, team player, and enthusiastic trainer" he was during their time working together. (Exhibit G, Yoganeethi P U Letter).

On a more personal level, Mr. Sripuram is also a supportive father and husband and sibling. His brother, Srikanth, has "always looked up to [Mr. Sripuram] and his achievements." (Exhibit H, Srikanth Reddy Sripuram Letter). As adults, Mr. Sripuram has continued to "give[] his time and advice" to Srikanth, and his wife. *Id*. His younger sister, Shirisha, similarly describes Mr. Sripuram as a "hardworking individual who has always been a source of inspiration for [their] family," including for her as she set out on her career path. (Exhibit I, Shirisha Sripuram Letter). Mr. Sripuram's cousin, Rakesh Gurrala, has also been "profoundly influenced by his mentorship." (Exhibit J, Rakesh Reddy Gurrala Letter). As children, Mr. Sripuram "patiently guided" Mr. Gurrala when he was struggling with schoolwork and, as adults, Mr. Gurrala admires and remains grateful for the ways in which Mr. Sripuram "serve[s] as a role model not only to [him] but to countless others." *Id*.

Mr. Sripuram also started his own family in May 2013 when he married Pragnya Sripuram. Particularly as Mr. Sripuram has reckoned with—and tried to make up for—his involvement in this offense, Pragnya has been his rock. (*See* Exhibit K, Sravya Iyyapu Letter). The couple has also proudly grown their family after suffering two miscarriages, welcoming their daughter, Yisha, in 2017 and their son, Taksh, in 2020.

Mr. Sripuram continues to deal with the consequences of his conduct on a daily basis. He shoulders unimaginable shame and regret for his actions. Indeed, he is "humiliated and distraught that [he] . . . allowed [him]self to act the way [he] did." (Exhibit B, Lakshmikanth Reddy Sripuram Letter). Despite his involvement in this offense, however, Mr. Sripuram has demonstrated recognition and affirmative acceptance of his personal responsibility, and he has assisted authorities in his investigation. Moving forward, he is committed to "doing everything [he] can to make things right." *Id*.

### ii) The nature and circumstances of the offense [§ 3553(a)(1)]

Mr. Sripuram is an exceptionally talented software developer. He is also the owner and president of a small information technology staffing company called PIntegra. Mr. Sripuram and PIntegra endeavored to train its employees and then place them in various IT projects throughout the country.

Mr. Sripuram met Srini Kancha in June 2013. Kancha was Mr. Sripuram's supervisor while working on an IT project for the New York Department of Sanitation. During the project, Mr. Sripuram and Kancha became good friends.

In January 2014, Mr. Sripuram left Kancha's project to work as a PeopleSoft Workflow technical consultant at Statewide Financial Services (SFS) in Albany.

In June 2014, Kancha interviewed with the New York State Office of the State Comptroller ("OSC"). At the time, OSC was attempting to redesign its information technology system (the "Redesign Project"). Ultimately, Kancha was hired as the manager of the Redesign Project's Application Development Team (the "Application Development Team"). In that role, he supervised a large team of OSC programmers and junior programmers. He also participated in the interviews of potential candidates, along with at least two other OSC employees.

Recognizing that Mr. Sripuram was a talented developer that had recently started his own staffing company, Kancha approached Mr. Sripuram about hiring PIntegra's employees. He told Mr. Sripuram that he would hire PIntegra employees if PIntegra paid him a portion of any fee paid to PIntegra and its employees. For example, if an OSC contract employee was to be paid $60-$80/hour, Kancha demanded a certain percentage of the amount.

OSC generally interviewed three candidates for an open position. The three candidates were generally asked a set of approximately 30 specific PeopleSoft questions that were selected

based upon the areas of expertise desired, in order to determine whether they actually had the experience and knowledge indicated on their applications. Mr. Sripuram and Kancha worked together to prepare the PIntegra employees for the OSC interview: they provided them with likely questions to be asked; they updated their resumes; they trained them to be well qualified. Regrettably, for three candidates, Mr. Sripuram and Kancha exaggerated the candidate's qualifications.

From in or about January 2015, through in or about October 2016, OSC hired 17 consultant programmers for the Redesign Project. Of those 17 programmers, not all were staffed through PIntegra. Specifically, four candidates were direct W-2 employees and the remaining were subcontracted from other staffing companies by Mr. Sripuram **at the request of Kancha**.

Based upon PIntegra's financial records, Mr. Sripuram profited approximately $54,000 from the scheme, as follows:

| Year | Total Payments PIntegra Received from OSC | Number of programmers | Total amount paid to Sub-Vendors: | Amount Paid to Kancha by PIntegra | Total Profit to PIntegra |
|---|---|---|---|---|---|
| 2015 | $105,360.00 | 2 | $83,616.00 | Cash ($10,732.00) Donations and Gifts ($1,245.00) | $9,767.00 |
| 2016 | $722,510.72 | 9 | $590,605.81 | Cash ($78,952.00) Donations and Gifts ($3,119.22) | $44,833.69 |
|  |  |  |  |  |  |
|  |  |  |  | **2015 and 2016 Profit to Defendant:** | **$54,600.69** |

Upon information and belief, the Redesign project was successful.

Mr. Sripuram quickly realized, however, that the financial benefit of the arrangement with Kancha was not worth the time, or risk. In fact, Mr. Sripuram found himself spending many sleepless nights training the employees and otherwise working on the OSC project himself, fearful that PIntegra's reputation would be irreparably damaged if the contract programmers were deemed unqualified. Simply stated, the $54,000 profit to Mr. Sripuram over two years was not worth the amount of time he subsequently spent rectifying his mistakes.

### iii) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense [§ 3553(a)(2)(A)];

Mr. Sripuram has no prior convictions resulting in zero criminal history points. Courts have found that "the length of time a person refrains from the commission of crimes, which is invariably tied to a person's age, is a factor that is critical to a court's determination of the sentence it should impose." *United States v. Ward*, 814 F.Supp. 23, 24 (E.D. Va. 1993) (the 49-year-old defendant justifiably received a guidelines downward departure after the sentencing court determined that he had led a life otherwise void of criminal convictions). "The positive correlation between age and recidivism is impossible to deny[,]" and it has been observed that "[r]ecidivism rates decline consistently as age increases." *United States v. Nellum*, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) *quoting* Federal Sentencing Guidelines, at 121; *see also United States v. Green*, 2007 WL 869725, at *2 (S.D. Ohio Mar. 20, 2007).

Statistically, a 40-year-old, first time offender, in criminal history category 1, such as Mr. Sripuram, has only a 12.1% likelihood of recidivism. *See U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 28. Realistically, however, the true likelihood of recidivism here is as close to 0% as possible. For this reason, among others, the Court should sentence Mr. Sripuram to a sentence of probation consistent with § 3553(a).

### iv) The need for the sentence imposed to afford adequate deterrence to criminal conduct [§ 3553(a)(2)(B)];

It is well established that there is no difference between probation and imprisonment in deterrent effect. *See e.g. Nat'l Research Council, The Growth of Incarceration in the United States: Exploring Causes and Consequences* 134-40, 337 (2014) (concluding that because the marginal deterrent effect of long sentences, if any, is so small and so far outweighed by the increased costs of incarceration, long sentences are "not an effective deterrent"); Daniel S. Nagin, *Deterrence in the Twenty-First Century: A Review of the Evidence* (2013); Frances T. Cullen et al. *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, Prison Journal 91: 48S (2011).

Other studies have found that, while specific and general deterrence are components of most sentences, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.; see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447- 48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

### vi) The need to avoid unwarranted sentence disparity [§ 3553(a)(6)]

Mr. Sripuram should receive a sentence that is consistent with sentences imposed in other cases. The Second Circuit has repeatedly acknowledged that a sentencing court should avoid unwanted sentencing disparities. *See United States v. Brennan*, 395 F.3d 59, 69 (2d Cir. 2005); *United States v. Dorvee*, 616 F.3d 174, 182-83 (2d Cir. 2010); *United States v. Cavera*, 550 F.3d 180, 188-89 (2d Cir. 2008).

Given Mr. Sripuram's status as a non-citizen, any potential prison sentence he receives will be more restrictive and in harsher conditions than a similarly situated U.S. citizen., Typically, as a first-time, non-violent offender, Mr. Sripuram would be assigned a more favorable, less restrictive BOP designation. However, as a non-citizen, Mr. Sripuram would be classified as a "Deportable Alien" and thus, any sentence of incarceration imposed on him would likely be served at a private, for-profit prison in harsher, more restrictive conditions. In the 2016 report "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" by the Office of the Inspector General ("OIG"), it was concluded that "in most key areas, contract prisons incurred more safety and security incidents per capita than comparable BOP institutions." (Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons, Office of the Inspector General, August 2016).

The harsh conditions Mr. Sripuram will face while incarcerated are likely to be compounded by the location of his designated facility. Non-citizens, like Mr. Sripuram, are exempt from the general rule of the BOP to place prisoners within 500 miles of their release residence, where they have the support of their community and family. A designation at a facility further away from his family's New Jersey residence would make it more difficult, if not impossible, for his family and friends to visit.

In addition, a similarly situated U.S. citizen would typically be eligible for early release programs, such as home confinement or a halfway house. Due to his immigration status, Mr. Sripuram is ineligible for these early release programs. Thus, any term of incarceration served by Mr. Sripuram would be functionally longer.

The harsher sentences faced by non-citizens was noted by Chief Judge McMahon in *United States v. Connolly*, 16-cr-370 (S.D.N.Y. Oct. 24, 2019). Following a conviction for conspiracy to commit wire fraud and bank fraud, defendant Gavin Black was facing a substantial term of

incarceration at the Government's recommendation. In sentencing Black to three years' probation plus nine months of home confinement to be served in the United Kingdom—Black's home country—Chief Judge McMahon explained:

> If I could sentence Mr. Black to a term of incarceration—a brief term of incarceration—knowing that he would go to a facility appropriate to his criminal conduct, I would do it. But I know that I can't. I know that simply because he is a non[-]citizen—and I use that term advisedly, he is not an illegal alien—[b]ut because he is a non-citizen, he will not be eligible to serve his sentence in the same way that any American citizen who stood convicted of this crime would serve. And that's not right… -- for reasons I cannot comprehend, at the end of that term he could not walk out the door and be picked up by [his attorney] and taken to the airport. He would be treated like an illegal alien, and he would be released into the custody of ICE, and at some point long after my intended sentence had expired he would be deported. And that's not right. … I can't bring myself to impose a sentence of incarceration in the United States for Mr. Black.

(*See Connolly*, [Dkt. 457] Sent. Tr. (Nov. 19, 2019) at 91:8-92:13)

As in Black's case, following his release from prison, Mr. Sripuram would serve unnecessary, additional time incarcerated in an immigration facility until he is removed from the United States. The conditions Mr. Sripuram will face within the immigration facility are likely to be deplorable and thereby exacerbate the resulting disparity. In the 2019 report "Concerns about ICE Detainee Treatment and Care at Four Detention Facilities" by the OIG several concerns were noted, including nooses in cells, expired food, overly restrictive segregation, dilapidated and moldy bathrooms, and inadequate clothing and hygiene items. (Concerns about ICE Detainee Treatment and Care at Four Detention Facilities, Office of the Inspector General, June 2019). Noting "the ICE problem and the camp problem," in *Untied States v. Millul*, 18-cr-579 (S.D.N.Y.) (Rakoff, J), [Dkt. 156].

In sum, due to his immigration status, Mr. Sripuram may serve a longer sentence and in

-14-

harsher conditions than U.S. citizens who commit the same offense.

## CONCLUSION

For the reasons explained above, we respectfully request the Court impose a sentence of probation. A probationary sentence in this case represents a sentence that is sufficient but not greater than necessary.

Respectfully submitted,

/s/ Ernesto Cerimele
Ernesto Cerimele
**KLINGEMAN CERIMELE, ATTORNEYS**
100 Southgate Parkway, Suite 150
Morristown, NJ 07960
*Attorneys for Defendant Lakshmikanth Reddy Sripuram*

Dated: July 31, 2024

## **CERTIFICATION OF SERVICE**

I, Ernesto Cerimele, hereby certify that on July 31, 2024, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Assistant United States Attorney Katherine Kopita.

/s/ Ernesto Cerimele
Ernesto Cerimele
**KLINGEMAN CERIMELE, ATTORNEYS**
100 Southgate Parkway, Suite 150
Morristown, NJ 07960
*Attorneys for Defendant Lakshmikanth Reddy Sripuram*

Dated: July 31, 2024